UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Aquatech Corporation, d/b/a United Aqua Group, | Case No. 2:24-cv-01623-CDS-BNW |
| Plaintiff | **Order Granting Plaintiff's Motion for Default Judgment** |
| v. | [ECF No. 10] |
| Sunstone Pools & Outdoor Living LLC, et al., | |
| Defendants | |

Plaintiff Aquatech Corporation, d/b/a United Aqua Group, (Aquatech) initiated this action against defendants Sunstone Pools & Outdoor Living LLC, Brad Cormack, and Audrey Cormack bringing claims of (1) breach of contract—membership agreement, (2) unjust enrichment, (3) breach of contract—guaranty, and (4) breach of a promissory note. Compl., ECF No. 1. After defendants' failure to respond to the complaint, Aquatech filed for, and received, an entry of default as to all defendants. *See* ECF No. 8; ECF No. 9. Aquatech now moves for default judgment against the defendants. Mot. for default j., ECF No. 10. To date, no response to the motion has been filed. For the reasons set forth herein, I grant plaintiff's motion for default judgment.

I.    Background[1]

Aquatech's claims stem from defendants' alleged failure to adhere to three agreements: a Membership Agreement, a Promissory Note, and a Guaranty Agreement. On June 13, 2019, Aquatech and Sunstone entered into a United Aqua Group (UAG) Membership Agreement. ECF No. 1 at ¶ 9; *see* United Aqua Group Member Agreement, Pl.'s Ex. A, ECF No. 1-1. Under the agreement, Aquatech granted Sunstone access to Aquatech's member-only purchasing group in

---

[1] Unless otherwise noted, the court only cites to the complaint (ECF No. 1) to provide context to this action, not to indicate a finding of fact.

exchange for Sunstone's payment of membership dues. ECF No. 1 at ¶ 9; ECF No. 1-1 at 2. Also on June 13, 2019, in conjunction with the Membership Agreement, Brad and Audrey Cormack, acting as Guarantors, executed a Continuing Guaranty Agreement "in favor of Aquatech, unconditionally guaranteeing the prompt payment and performance of Sunstone" under the Membership Agreement and any other liabilities or indebtedness arising from the Membership Agreement. ECF No. 1 at ¶ 18; ECF No. 1-1 at 23–24.

Additionally, on May 1, 2023, Sunstone borrowed $270,770.99 from Aquatech to finance prior purchases of products acquired through Aquatech. ECF No. 1 at ¶ 10. To verify the loan and Sunstone's repayment obligations, Sunstone, through Brad Cormack, executed and delivered a "Promissory Note" to Aquatech. *Id.* at ¶¶ 11, 12; Promissory Note, Pl.'s Ex B., ECF No. 1-2. Aquatech is the current holder of the Promissory Note. ECF No. 1 at ¶ 13. The Promissory Note requires Sunstone to make fifty-eight various sized monthly payments beginning on May 29, 2023, and ending on February 29, 2028. ECF No. 1-2 at 3. It also includes a pledge agreement which states "[a]s collateral for this note, it is agreed that the number of shares . . . shall be pledged against the note and not released until the balance of the account is paid in full." *Id.* The Note provides that 239 shares were pledged, which, at the current market value, equaled the financed amount of $370,770.99. *Id.* at 2. Sunstone breaches the Note terms if it fails to pay any installment "as they become due 60 days of respected due date[.]" *Id.* at 3. Upon breach, the note would "automatically revert to open trade receivable balance for entire unpaid balance, with late charges (at prevailing Aquatech late charge rates) calculated from time of most recent payment made, with entire balance due at once." *Id.* The Note also states that, "[i]f collection of this note is required to be collected through attorney or other external collection resources, borrower shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorney's fees incurred by the holder hereof." *Id.*

1  According to Aquatech, the Membership Agreement permitted Sunstone to purchase
2  products through Aquatech, which Sunstone did. ECF No. 1 at ¶¶ 19, 20. Aquatech alleges that
3  after Sunstone purchased products through Aquatech, it failed to pay the amounts owed for
4  such purchases and currently owes Aquatech for these purchases and other amounts owed
5  under the Membership Agreement. *Id.* at ¶ 21. Aquatech further alleges that, pursuant to the
6  Guaranty, the Guarantors—Brad and Audrey Cormack—each agreed, jointly and severally, to
7  "unconditionally and absolutely guarantee the prompt payment and performance of all of
8  Sunstone's obligations under the Membership Agreement. *Id.* at ¶ 23. Additionally, although
9  Sunstone made eight of the initial payments under the Promissory Note, from May to December
10 2023, it has failed to make the payment that was due and owing on January 1, 2024. Since then,
11 Sunstone has not made any payments. *Id.* at ¶¶ 25, 26.

## II. Discussion

Obtaining a default judgment under Federal Rule of Civil Procedure 55 is a two-step process. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) (explaining the process). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After default is entered, a party may seek entry of default judgment under Rule 55(b).

Upon entry of default, I take as true the factual allegations in the non-defaulting party's complaint, except those related to the amount of damages. Fed. R. Civ. P. 8(b)(6); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Nonetheless, "[e]ntry of default does not entitle the non-defaulting party to a default judgment as a matter of right." *Warner Bros. Ent. Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted). The "general rule [is] that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472 (citing *Peno v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). Whether to grant a default judgment lies within the district

court's discretion. *Id.* Aquatech's motion requests that I enter judgment by default against defendants "in the amount no less than $420,539.91 plus attorney's fees, and costs." ECF No. 10 at 9.

Aquatech has satisfied the procedural requirements for a default judgment as the clerk has entered default against the defendants. *See* ECF No. 9. I now consider the following factors in determining whether to grant a default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72.

The first *Eitel* factor requires me to consider whether Aquatech will suffer prejudice if a default judgment is not entered. Defendants have failed to appear or defend against this lawsuit in any capacity. Aquatech will suffer prejudice if default judgment is not entered, as it will have no other means to litigate its claims. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Potential prejudice to Plaintiffs favors granting a default judgment . . . . If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Thus, this factor weighs in favor of granting the motion for default judgment.

The second and third *Eitel* factors favor a default judgment when the "plaintiff state[s] a claim on which the plaintiff may recover." *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978). Here, Aquatech seeks judgment on its three breach of contract claims. ECF No. 10 at 8.[2] Breach-of-contract claims require: (1) a valid contract, (2) performance or excuse of performance by the

---

[2] Aquatech pleads an unjust enrichment claim in the alternative to its breach of contract claim relating to the Membership Agreement. ECF No. 1 at ¶¶ 35–39. However, as explained later in this order, I find that Aquatech adequately pled its breach of contract claim relating to the Membership Agreement, and therefore do not analyze its unjust enrichment claim. *See Farmer v. Thar Process, Inc.*, 705 F. Supp. 3d 1218, 1228–29 (D. Or. 2023) (holding that denial of default judgment as to a plaintiff's unjust enrichment claim does not alter the outcome of the motion or the computation of damages where the unjust enrichment claim is pled in the alternative to a breach of contract claim and the plaintiff was entitled to default judgment as to its breach of contract claim).

plaintiff, (3) material breach by the defendant, and (4) damages as a result of the breach. *See Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) (quoting *Malone v. Univ. of Kan. Med. Ctr.*, 552 P.2d 885, 888 (Kan. 1976)). I will address each breach of contract claim in turn.

Aquatech first alleges that defendants breached the Membership Agreement between the parties. I find, taking the allegations as true, that Aquatech has adequately alleged that (1) a contract exists (Aquatech attached a copy of the Membership Agreement to the complaint), (2) Aquatech was not deficient in its performance, (3) defendants breached the agreement by "failing to pay for the Products it ordered and received and by failing to pay additional amounts due pursuant to the Membership Agreement[,]" and (4) Aquatech suffered damages as a result of defendants failure to pay. ECF No. 1 at ¶¶ 29–34. Aquatech has thus adequately pled this breach of contract claim.

Aquatech next alleges that defendants breached the Guaranty Agreement. Again, taking the allegations as true, Aquatech has adequately alleged that (1) a contract exists (as well as attached a copy of the Guaranty Agreement to the complaint), (2) it was not deficient in its performance, (3) the Guarantors breached the agreement by "fail[ing] and refus[ing] to pay the amounts owed," and (4) it suffered damages as a result of the breach. *Id.* at ¶¶ 41–44. Aquatech has thus adequately pled this breach of contract claim.

Aquatech also alleges that the defendants breached the agreement encompassed in the Promissory Note. Taking the allegations as true, Aquatech has adequately alleged that (1) a contract exists (Aquatech attached a copy of the Promissory Note to the complaint), (2) Aquatech was not deficient in its performance, (3) defendants breached the agreement by "fail[ing] to make a payment pursuant to the Note since December, 2023," and (4) Aquatech suffered damages as a result of the breach. *Id.* at ¶¶ 46–54. Aquatech has thus adequately pled this breach of contract claim. Because Aquatech has adequately pled the elements of its breach of contract claims, I find that the second and third *Eitel* factors weigh in favor of entry of default judgment.

In assessing the fourth *Eitel* factor, I consider "the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether 'the recovery sought is proportional to the harm caused by [the] defendant's conduct.'" *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (quoting *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010)); *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. Here, Aquatech seeks a total of $420,539.91, plus attorney's fees and costs. ECF No. 10 at 4. Aquatech argues that this number stems from the $376,634.84 it is owed on the Promissory Note and $43,905.07 it is owed from the product purchases. *Id.* Although $420,539.91 is a large sum of money, the money Aquatech seeks is comprised only of the charges enumerated in the agreement—principal charges, interest, and attorney's fees. Therefore, I find that this is not an unreasonable amount or disproportionate to the harm allegedly caused by defendants' conduct. *See Pritikin Icr LLC v. Apricus Health Mso LLC*, 2024 U.S. Dist. LEXIS 35359, at *10 (D. Ariz. Feb. 28, 2024) (finding that alleged damages of $500,000 was proportional to the harm when it was indicative of the amount defendant owed plaintiff but never paid). Therefore the fourth *Eitel* factor weighs in favor of default judgment.

The fifth *Eitel* factor requires that I weigh the possibility of a dispute regarding facts material to the case. *PepsiCo., Inc.*, 238 F. Supp. 2d at 1177. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Id.* (citation omitted). Defendants have neither appeared in this case nor responded to this motion. Moreover, Aquatech has sufficiently pled allegations of breach of contract and demonstrated it is entitled to relief. Defendants have had the opportunity to clarify that they did not engage in unauthorized behavior or breach the contracts and have not chosen to do so. Consequently, there is little likelihood of a dispute regarding whether defendants are liable in this case. Thus, the fifth factor weighs in favor of entry of default judgment.

The sixth *Eitel* factor requires that I consider whether the defendants' default is due to excusable neglect. *PepsiCo., Inc.*, 238 F. Supp. 2d at 1177. No evidence before me suggests that defendants failed to respond due to excusable neglect. Thus, the sixth *Eitel* factor weighs in favor of entry of default judgment. *See United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (per curiam) (holding that it was "perfectly appropriate" for the district court to enter default judgment against a defendant that failed to appear in the action).

Finally, the seventh *Eitel* factor requires that I consider the policy favoring a decision on the merits. "Cases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But defendants' failure to respond to the complaint "makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Thus, although this final *Eitel* factor always weighs against an entry of default judgment, it does not preclude me from entering one. "A decision on the merits is desirable, but under these circumstances, default judgment is warranted." *Nev. Prop. 1, LLC v. Kiwibank Ltd.*, 2020 WL 5633048, at *2 (D. Nev. Sept. 21, 2020).

I find that Aquatech is entitled to default judgment against defendants and is entitled to its requested relief in the form of monetary damages. I also find that Aquatech is entitled to any post-judgment interest available under 28 U.S.C. § 1961 ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").

## III. Conclusion

IT IS HEREBY ORDERED that plaintiff's motion for default judgment [ECF No. 10] is **GRANTED.** The Clerk of Court is instructed to enter judgment in favor of Aquatech Corporation d/b/a/ United Aqua Group on its breach-of-contract claims (Counts I, III, and IV) against Sunstone Pools & Outdoor Living LLC, Brad Cormack, and Audrey Cormack in the amount of $420,539.91, with the amount accruing post-judgment interest until the amount is paid in full.

IT IS FURTHER ORDERED that Aquatech's unjust enrichment claim (Count II) is dismissed without prejudice.

Any motion for attorney's fees and costs under Fed. R. Civ. P. 54 must be made by April 29, 2025.

The Clerk of Court is further instructed to close this case.

Dated: April 14, 2025

_____
Cristina D. Silva
United States District Judge